**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JORDANY EFRAIN RAMOS RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>FIELD OFFICE DIRECTOR, DETROIT FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, OFFICIAL CAPACITY; U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.<br><br>Defendants, | CASE NO. 4:26-cv-1054<br><br>DISTRICT JUDGE<br>JUDGE PAMELA A. BARKER<br><br>MAGISTRATE JUDGE<br>CARMEN E. HENDERSON<br><br>**REPORT AND RECCOMENDATION** |

## I. Introduction

Pending before the Court is Petitioner Jordany Efrain Ramos Ramirez's Petition for Writ of Habeas Corpus and Emergency Injunctive Relief, challenging his detention by United States Immigration and Customs Enforcement ("ICE"). (ECF No. 1). The matter was referred to the undersigned for report and recommended decision. (ECF No. 8). For the reasons set forth below, it is RECOMMENDED that the Court DENY the petition.

## II. Background

Petitioner is "a 21-year-old citizen of Honduras who has resided in the United States since he was eleven when he entered on a B-2 visa on February 10, 2015."[1] (ECF No. 1, at 2). Respondent represents that Petitioner "… was authorized to remain in the United States until

---

[1] Petitioner represents that he entered the United States at age eleven in his opening petition and age ten in his argument section. (*See* ECF No. 1, at 2; ECF No. 1, at ¶ 40). However, the record reflects Petitioner's birthdate as May 20, 2004. (ECF No. 14-5, at PageID #: 170). Therefore, the Petitioner would have been aged ten on February 10, 2015.

August 9, 2015." (ECF No. 14, at 1–2). Respondent further contends that "Petitioner filed for asylum with United States Citizenship and Immigration Services ("USCIS") on August 10, 2015." (*Id.*).

Petitioner was issued a Notice to Appear dated April 29, 2020, and filed written pleadings with the Immigration Court. (*Id.*). On August 9, 2021, the immigration judge ("IJ") found that he was removable to Honduras. (*Id.*). On November 1, 2022, the IJ issued a second order again finding that Petitioner was removable to Honduras. (*Id.*).

Petitioner also asserts that he is the derivative beneficiary of a Form I-918, Supplement A petition filed on his behalf on January 28, 2022, as the qualifying family member of his sister, a principal U-1 petitioner and crime victim. (ECF No. 15, at 3). According to Petitioner, on August 15, 2024, USCIS issued a Bona Fide Determination Notice finding the U-visa petition to be bona fide and, on that basis, granted him deferred action pending adjudication of the underlying petition. (*Id.*)

The record further establishes that Petitioner attended a gun show in Berea, Ohio, on or about February 22, 2026, and completed ATF Form 4473. (*See* ATF Form 4473, ECF No. 14-5, at 1–3). On the form, Petitioner identified himself as the "transferee/buyer" and represented that he was the "actual transferee/buyer of all the firearm(s) listed on this form." (*Id.*). The firearm identified on the form was a Taurus 9mm pistol. (*Id.*). His application to purchase the firearm was denied, and Petitioner did not obtain or possess the firearm as a result of the transaction. (*Id.*). According to Respondent, HSI agents thereafter apprehended Petitioner at his home on April 16, 2026. (ECF No. 14, at 2–3).

On April 30, 2026, Petitioner received a custody redetermination hearing before IJ Richard Drucker. (Order of the Immigration Judge, ECF No. 14-6, PageID #: 179–182). The IJ

denied bond, finding that Petitioner presented a danger to the community. (*Id.*). Petitioner subsequently requested another bond hearing. A second hearing was held on July 2, 2026, and the IJ again denied bond based on a finding that Petitioner posed a danger to the community. (Order of the Immigration Judge, ECF No. 14-7, PageID #: 181). Petitioner reserved his right to appeal that determination to the Board of Immigration Appeals ("BIA") and his Appeal of the July 2, 2026, custody redetermination decision was due on August 3, 2026. (*Id.*)

On June 1, 2026, the IJ denied Petitioner's application for asylum, his application for withholding of removal under INA § 241(b)(3), and his application for withholding of removal under the Convention Against Torture. (Order of the Immigration Judge, ECF No. 14-8, at 3). The IJ then entered an order of removal to Honduras. (*Id.*). On June 12, 2026, Petitioner filed a timely appeal to the June 1, 2026, order, to the BIA and that appeal remains pending. (ECF No. 14, at 2); (ECF No. 15, at 2).

## III. Procedural History

On May 6, 2026, Petitioner filed his petition for writ of habeas corpus challenging his detention by ICE at Northeast Ohio Correctional Center in Youngstown, OH. (ECF No. 1). On May 19, 2026, Petitioner filed a motion for targeted and expedited discovery with proposed order. (ECF No. 5). On the same day, Judge Pamela A. Barker denied Petitioner's motion. (ECF Order May 19, 2026). On May 28, 2026, Petitioner filed a Renewed Motion for Limited Discovery in Support of his Petition for Writ of Habeas Corpus. (ECF No. 7). And on June 29, 2026, the undersigned denied the motion and issued an Initial Order, instructing Respondents to file a response to the petition. (ECF No. 11, 12). Respondents filed their return of writ on July 10, 2026. (ECF No. 14). And on July 23, 2026, Petitioner filed his response. (ECF No. 15).

## IV. Arguments

In his habeas petition, Ramos Ramirez challenges his detention and denial of bond as violations of 8 U.S.C. § 1226(a), the Fifth Amendment Due Process Clause, the Second Amendment, and the Administrative Procedure Act. (ECF No. 12–17). Ramos Ramirez also argues that the Court should waive administrative exhaustion and address the merits of his habeas petition as the factors for exhaustion set forth in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007), weigh in favor of excusing exhaustion. (*Id.* at 4–6). Petitioner seeks immediate release or an Order directing the Immigration Court to hold a bond hearing. (*Id.* at 15).

First, Ramos Ramirez contends that his detention violates 8 U.S.C. § 1226(a), as he is "entitled to a bond hearing" and was "wrongly denied bond based on a decision that forced an unfair burden of proof upon him, asking him to disprove dangerousness based on his submitted and denied gun application through legal channels." (*Id.* ¶¶ 58–59).

Next, Ramos Ramirez argues that his detention violates the Second Amendment. He represents that the government's use of 18 U.S.C. § 922(g)(5)– which prohibits those "illegally or unlawfully in the United States" from possessing or receiving firearms– categorizes Petitioner as dangerous, and this *per se* violates the Second Amendment. (*Id.* ¶ 62) (emphasis in original). He contends that "[t]here is no historical tradition of categorically banning non-violent individuals from inquiring about or possessing firearms based solely on their immigration status." (*Id.* ¶ 64). And he asks this Court to "…[d]eclare 18 U.S.C. § 922(g)(5) unconstitutional as applied to Petitioner." (*Id.* at 15).

Then, Ramos Ramirez asserts that his detention violates the Administrative Procedure Act. He represents,

> The Immigration Judge's decision to find Petitioner pose [sic] a danger to community based on his denied gun application was reliant upon an uncharged and

> legally unsupported theory to mandates [sic] his continued detention. This policy is arbitrary, capricious, and not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A).

(*Id.* ¶ 67). Finally, Ramos Ramirez argues his detention violates the Fifth Amendment's Due Process Clause. He asserts several arguments including, "Respondents' detention of Petitioner and denial of his bond was presumably based on a legally unsupported theory that Petitioner's denied gun application equated to proof of dangerousness of the Petitioner, neglecting all positive factors in the record" and (2) "[the IJ's] [r]eliance on a failed background check inquiry—without any evidence of violent intent or criminal history—fails to meet the clear and convincing standard required to deprive an individual of their physical liberty (citation omitted)." (*Id.* ¶¶ 70, 72). Ramos Ramirez also challenges the IJ's dangerousness determination,

> At the Bond Hearing the IJ essentially treated Petitioner's denied [gun] application as a criminal attempt, which improperly collapsed the distinction between lawful regulatory compliance and criminal conduct, rendering the statutory scheme as applied inconsistent with the safeguards under the Second Amendment ... the IJ failed to properly consider all the positive factors presented in the Brief and exhibits in support of the Bond Request.

(*Id.* ¶¶ 39–40).

Respondent argues that "[b]ecause Petitioner is properly detained under 8 U.S.C. § 1226(a), has already received two bond hearings, and has not exhausted his administrative remedies, his petition should be denied." (ECF No. 14, at 1). Respondent further contends that courts do not review the merits of § 1226(a) bond determinations and Petitioner's "… disagreement with the IJ's decision on how to weigh community ties or the likelihood that relief from removal will be granted is not unlawful or a due process violation." (*Id.* at 4). Finally, Respondent urges this Court to reject Petitioner's argument that his detention violates his Second Amendment rights as Petitioner was not engaged in protected conduct under the Second

Amendment when he completed his ATF Form 4473 application and "...this argument is not cognizable in a habeas proceeding, but even if it was, it is meritless." (*Id.* at 5–6).

In his reply, Petitioner maintains that "Respondents cannot show that [he] received a constitutionally adequate, individualized bond hearing." (ECF No. 15, at 6). Petitioner challenges the IJ's order, finding the procedure and "checkbox" explanation do not satisfy the due process requirement of an individualized hearing. (*Id.* at 6–9). Finally, Petitioner argues for the first time in his reply that his detention disregarded his purported deferred-action status arising from the U-visa bona fide determination. (*Id.* at 4).

## V. Discussion

### A. Administrative Exhaustion

Before determining the merits of this petition, the Court must first address Respondents' argument that it should require Petitioner to exhaust his administrative remedies (*e.g.* appeal the IJ's decision to deny him a bond hearing to the Board of Immigration Appeals), before Ramos Ramirez is permitted to proceed with his habeas petition. (ECF No. 14, at 6–8). However, Congress has not imposed a statutory administrative exhaustion standard, therefore, "judicial discretion governs whether or not exhaustion should be required." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). Additionally, the Sixth Circuit has held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.").

Petitioner relies on *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007), to argue that the exhaustion requirement should be excused. (ECF No. 1, ¶15). And this Court agrees for the

reasons set forth below. Although, the Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies, other courts in this district have applied the following three factor test utilized in *Puga*,

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted); *see also United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983).

Here, Petitioner satisfies these factors. First, Petitioner presents Fifth and Second Amendment claims concerning the constitutionality of his detention and the procedures employed during his custody redetermination hearings. Because the BIA lacks authority to resolve constitutional challenges to federal statutes or agency procedures, agency expertise will not aid in resolving the constitutional questions set forth by Petitioner. *See Sterkaj*, 439 F.3d at 279.

Second, there is no indication that relaxation of the exhaustion requirement would encourage Petitioner to deliberately bypass the administrative scheme. The record establishes that Petitioner reserved his right to appeal the July 2, 2026, custody redetermination decision to the BIA. (ECF No. 14-7, PageID #: 181). Although there is no indication that Petitioner has completed that appeal, Petitioner has pursued administrative remedies with respect to his underlying removal order, which remains pending before the BIA. (ECF No. 14, at 2); (ECF No. 15, at 2). Moreover, Petitioner's claims raised in this petition concern the constitutional adequacy of his detention and bond proceedings, issues that the BIA cannot resolve. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026)

("[B]ecause [Petitioner's] habeas petition includes a due process claim, the administrative scheme (*i.e.* appeal to the BIA) is likely futile.").

Third, administrative review is unlikely to obviate the need for judicial review of the constitutional claims presented. Even if the BIA were to review the July 2, 2026, custody determination, "it is uncertain whether such questions can be raised or adjudicated in Immigration Court or before the BIA." *Alonso-Portillo v. Bondi*, 2025 WL 2483393, at *8 (S.D. Ohio Aug. 28, 2025). Requiring exhaustion under these circumstances would therefore delay judicial consideration without advancing resolution of the constitutional questions presented. Accordingly, the Court exercises its discretion to excuse prudential exhaustion and proceeds to the merits of Petitioner's habeas claims.

**B. Jurisdiction**

This Court has jurisdiction under U.S. Const.., Art. I, § 9, cl. 2 as the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const.., Art. I, § 9, cl. 2). And under 28 U.S.C. § 2241, district courts have authority to grant writs of habeas corpus to petitioners who show that they are in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(a), (c)(3). While Congress has enacted statutes limiting judicial review of certain immigration related decisions, habeas relief remains available to those challenging the constitutionality of their detention. *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018); *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### C. Pre-Removal Non-Criminal Detention Pursuant to 1226(a)

The Immigration and Nationality Act ("INA") gives the Department of Homeland Security ("DHS") broad discretion and authority over detention matters. *Nielson v. Preap*, 586 U.S. 392, 397 (2019); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("The INA further provides that DHS may arrest and detain [an] alien, 'pending a decision on whether the alien is to be removed from the United States.'") (quoting 8 U.S.C. § 1226(a)); *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) ("[T]he plain text of § 1226(a) is clear that it applies to the detention of aliens who are awaiting a decision on whether they are to be removed from the United States."). Under 8 U.S.C. § 1226(a) of the INA, the government may arrest and detain a noncitizen unlawfully in the United States pending a decision on whether that individual is to be removed from the country. Respondent and Petitioner acknowledge that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). *See Guzman Chavez*, 594 U.S. at 526 (2021).

### D. Fifth Amendment Due Process Claim and Bond Hearing

Ramos Ramirez argues that his detention and denial of bond violate the Due Process Clause of the Fifth Amendment. As Respondent correctly notes, Petitioner received two custody redetermination hearings at which he had the opportunity to present evidence and argument concerning his release, the first held on April 30, 2026, and a redetermination hearing held on July 2, 2026. (ECF No. 14-6, PageID #: 179–182). IJ Richard Drucker, presided over both hearings and denied Petitioner's request for bond, concluding that Petitioner was a "danger to the community." (*Id.*). In his § 2241 petition, Petitioner challenges the findings of the IJ arguing that the Respondents' detention of Petitioner and denial of his bond are in violation of the Fifth Amendment Due Process Clause. (ECF No. 1 at 14–15). This Court addresses these arguments below.

The Fifth Amendment guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[P]rocedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976)). The Supreme Court has found that notice and an opportunity to be heard are the hallmarks of procedural due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–14 (1950). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003). Moreover, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531. But the government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community. *See Zadvydas*, 533 U.S. at 690. After all, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Id.*; *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

In its review, this Court notes that it has no authority to determine whether the IJ's discretionary determinations are correct. *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Demore*, 538 U.S. at 516–17. Instead, this Court's jurisdiction to review Petitioner's bond hearing is limited to "where that bond denial is challenged as legally erroneous or unconstitutional." *See Alonso-*

*Portillo*, 2025 WL 2483393, at *9 (quoting *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762 (N.D. Cal. 2019)); *see also Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 675–76 (E.D. Mich. 2020).

Petitioner contends that the IJ issued orders denying bond that "consist[ed] in [their] entirety of the single checked box 'Denied, because Danger to the community,' with no further elaboration." (ECF No. 15, at 4). Petitioner also asserts that the IJ improperly required him to disprove dangerousness based upon his denied firearm application. (ECF No. 1, at 12). Yet the record establishes that Petitioner appeared before an IJ with counsel and submitted both a bond request and a bond brief requesting conditional parole or bond. (ECF No. 1-3, PageID #: 24–28); (ECF No. 1-4, PageID #: 29–39). The record also reflects that he received two custody redetermination hearings at which he had the opportunity to present evidence and argument concerning his release, the first held on April 30, 2026, and the second held on July 2, 2026. (Order of the Immigration Judge, ECF No. 14-6, PageID #: 179–182); (Order of the Immigration Judge, ECF No. 14-7, PageID #: 181). After both hearings, the IJ issued a written order stating that Petitioner "requested a custody redetermination hearing" and that, "after a full consideration of the evidence presented," his request for a change in custody status was denied because he presented a danger to the community. (Order of the Immigration Judge, ECF No. 14-6, PageID #: 179–182); (Order of the Immigration Judge, ECF No. 14-7, PageID #: 181). Therefore, the record does not establish that the IJ applied an unconstitutional burden of proof, nor does it establish that the IJ failed to adhere to the commands of procedural due process of the Fifth Amendment.

Moreover, in his reply Petitioner relies on *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004) and *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) to support his contention that "in the immigration context, that an agency decision 'made without a rational explanation' is an abuse of discretion, and that a reviewing court 'may not assume' the agency 'considered factors

that it failed to mention in its opinion.'" (ECF No. 15, at 7). But the issue before the *Daneshvar and Allabani* Courts was "[i]n determining whether the Board of Immigration Appeals abused its discretion, this Court must decide whether the denial of [the] motion to reopen ... was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani*, 402 F.3d at 657 (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)). In both cases, Petitioners sought review of the order of the Board of Immigration Appeals denying their Motion to Reopen Immigration Proceedings. Here, Petitioner is detained under § 1226(a) and challenges the IJ's dangerousness determination, procedure, and adherence to the Fifth Amendment Due Process Clause. Thus, the legal standard applied in *Daneshvar* and *Allabani* is not applicable to Petitioner's circumstances. *See Daneshvar*, 355 F.3d at 615; *Allabani,* 402 F.3d at 668.

Furthermore, Petitioner's remaining Due Process challenge invites this Court to reweigh the evidence and reconsider the IJ's discretionary dangerousness determination. Specifically, Petitioner argues that the IJ improperly denied his bond request because the IJ did not consider that: "(1) Petitioner entered the United States when he was 10 years old and had resided in the U.S. for 12 years. He received and completed his elementary to high school education in the United States and maintained a consistent employment and tax history; (2) Petitioner did not have any violent criminal history; [and] (3) Petitioner maintained strong community ties with his friends and family in the United States." (ECF No. 1, at ¶ 40). These arguments identify evidence Petitioner believes should have received greater weight. Yet, the District Court "… has no authority to encroach upon an IJ's discretionary weighing of evidence." *See Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 675–76 (E.D. Mich. 2020) (citing *Arellano v. Sessions*, 2019 WL 3387210, at *7 (W.D.N.Y. 2019)); *See also* 8 U.S.C. § 1226(e). The Court therefore declines to

reconsider the evidence relied upon by the IJ and Petitioner's Fifth Amendment Due Process Claims do not prevail.

### E. Second Amendment Claim

Petitioner raises various challenges to his detention pursuant to the Second Amendment. Petitioner contends that the government's use of 18 U.S.C. § 922(g)(5)–which prohibits those "illegally or unlawfully in the United States" from possessing or receiving firearms– categorizes Petitioner as dangerous, and this categorization *per se* violates the Second Amendment. (ECF No. 1, ¶ 62). Petitioner further asserts that "[a]lthough [18 U.S.C. § 922(g)(5] was not clearly cited in the IJ's order, I-213 or other charging documentation, the order implies that the IJ assumed Petitioner's submitting a gun application evidenced his posing a danger to the community." (*Id.* ¶ 34). Petitioner contends that, "[t]here is no historical tradition of categorically banning non-violent individuals from inquiring about or possessing firearms based solely on their immigration status." (*Id.* ¶ 64). Finally, Petitioner requests that this Court "…[d]eclare 18 U.S.C. § 922(g)(5) unconstitutional as applied to Petitioner." (*Id.* at 15). Petitioner's arguments fail for the reasons set forth below.

First, Petitioner's challenges to the constitutionality of 18 U.S.C. § 922(g)(5) itself, do not prevail, as the Sixth Circuit has found the statute constitutional on its face and as applied. *See United States v. Lopez*, 929 F.3d 783, 785–86 (6th Cir. 2019); *United States v. Rangel-Tapia*, 2024 WL 966385, at *3 (6th Cir. Mar. 6, 2024). Second, Petitioner's challenges to the IJ's consideration or weighing of the circumstances surrounding his firearm application in assessing dangerousness, concern the type of review § 1226(e) does not permit.

In *United States v. Escobar-Temal*, the Sixth Circuit considered a Second Amendment challenge to 18 U.S.C. § 922(g)(5)(A) brought by an unlawfully present noncitizen. 161 F.4th 969

(6th Cir. 2025). The court recognized that the Second Amendment may protect at least some unlawfully present noncitizens who have developed sufficient connections to the national community. *Id.* at 976–80. Nevertheless, after considering the Nation's historical tradition of firearm regulation, the court held that 18 U.S.C. § 922(g)(5)(A) is constitutional. *Id.* at 980–85. The court concluded that the historical tradition supports the government's authority to disarm persons who lack a sufficiently regulable relationship with the government, even without an individualized determination that those persons are inherently dangerous. *Id.* at 983–85. The court therefore rejected both the facial and as-applied challenges to 18 U.S.C. § 922(g)(5)(A). *Id.*

However, in his reply, Petitioner notes that he "…never possessed a firearm[,] his conduct was not a substantial step toward any offense[,] and, in any event, he is among 'the people' the Amendment protects" therefore Respondents' Second Amendment argument fails. (ECF No. 15, at 10). But these factual contentions concerning Petitioner's firearm application, do not undermine the constitutionality of the statute itself. Moreover, Petitioner fails to present case law from the Sixth Circuit that supports any of his Second Amendment arguments. *Contra Alonso-Portillo*, 2025 WL 2483393, at *11 ("[Petitioner's Second Amendment] arguments simply do not sound in habeas. Even if his arguments were meritorious, the remedy for such violations is not immediate release or bond redetermination."). Furthermore, Petitioner directly contradicts Sixth Circuit precedent with his contention that, "[t]here is no historical tradition of categorically banning non-violent individuals from inquiring about or *possessing firearms* based solely on their immigration status." (ECF No. 1, ¶ 64) (emphasis added). The Sixth Circuit directly addressed this argument in *Escobar-Temal* finding, "[t]here is a longstanding tradition of disarming noncitizens" due to the "lack of relationship between the government and individuals of a group that make that group difficult or impossible to regulate." 161 F.4th at 984. Petitioner's

remaining arguments present factual challenges to the IJ's consideration of the record requiring review of the IJ's discretionary dangerousness determination that this Court may not conduct. *See* 8 U.S.C. § 1226(e). The Court therefore finds that Petitioner's Second Amendment contentions do not provide a basis for habeas relief.

### F. Additional Arguments Not Raised in the Petition

Ramos Ramirez raises two additional arguments for the first time in his reply. (ECF No. 15, at 4–6). First, he argues that Respondent's omission of two facts, (1) Petitioner is the derivative beneficiary of a Form I-918, Supplement A petition filed on his behalf on January 28, 2022, as the qualifying family member and (2) on August 15, 2024, USCIS issued a Bona Fide Determination Notice finding the U-visa petition to be bona fide and, on that basis, granted deferred action pending adjudication of the underlying petition, undermines the IJ's dangerousness determination for several reasons. (ECF No. 15, at 4). Second, Petitioner notes that, after this Petition was filed but before Respondents filed their Response, the court in *Immigration Center for Women & Children v. Noem*, 2026 WL 1455004 (C.D. Cal. May 20, 2026) ("*ICWC*"), issued a preliminary order addressing ICE's detention policies concerning certain noncitizens with pending U-visa petitions. (*Id.*)

Generally, claims raised for the first time in a reply or traverse are not properly before the Court. *See, e.g.*, *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (a district court may decline to review a claim raised for the first time in the traverse); *see also Alonso-Portillo*, 2025 WL 2483393, at *12. This Court will not consider Petitioner's first contention because the argument was not properly raised in the Petition. (*See* ECF No. 1). Even so, if the Court were to consider it, Petitioner's challenge ultimately asks the Court to reconsider the IJ's discretionary determination regarding dangerousness, which this Court may not do under 8 U.S.C. § 1226(e).

Nor will this Court consider Petitioner's second contention. In *Immigration Center for Women & Children v. Noem,* the court addressed ICE's implementation of a new enforcement policy in 2025 that repealed earlier policies concerning noncitizens with pending victim-based benefits petitions. 2026 WL 1455004, at *5–*7. In 2011, ICE policy provided that, as a general matter, ICE should not initiate removal proceedings against individuals known to be victims of a crime. *Id.* at *6. The policy also indicated that favorable discretionary measures, including release, deferral, or a stay of removal, would ordinarily be appropriate in such circumstances. *Id.* ICE's 2021 policy reflected these considerations and added that ICE would generally seek expedited adjudications of victim-based benefit petitions from USCIS and would consider a person's eligibility for victim-based benefits a positive discretionary factor. *Id.*

In 2025, ICE issued an updated policy that altered some of these prior guidelines:

> [T]he 2025 Guidance establishes that the following policies govern ICE officers' enforcement actions towards individuals with pending victim-based benefit petitions: officers should (1) "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised"; (2) "consult with" local ICE attorneys only "to ensure any such [civil enforcement] action is consistent with applicable legal limitations"; (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor"; and (4) will not "routinely request expedited adjudications from USCIS," but may do so on a case-by-case basis when "it is in ICE's best interests."

*Id.* (internal citations omitted). Nevertheless, the ICWC court granted preliminary injunctive relief on a class-wide basis and stayed implementation of ICE's 2025 policy, finding that the plaintiffs were likely to prevail on the merits of their Administrative Procedure Act claims challenging the policy. *See id*. at *33–*36, *47.

As another district court within the Sixth Circuit explained, "[t]he *ICWC* case does little to aid Petitioner's argument that his detention is unlawful. As an initial matter, *ICWC*'s persuasiveness is highly limited by the fact that it is in a non-final, preliminary injunction posture

currently on appeal from a different district that is not even within this Circuit." *Roberto Jaime Prado Orozco v. Raycraft*, 2026 WL 2138181 (E.D. Mich. July 24, 2026) (cleaned up); *see also Rauda Choto v. Ladwig*, 2026 WL 1652576, at *1–2 (W.D. La. June 8, 2026) (rejecting the petitioner's argument under *ICWC* because the court was "not persuaded that the existence of a non-final order entered in a separate litigation independently establishes" the petitioner's entitlement to relief). Therefore, the existence of that preliminary injunction, does not establish that Ramos Ramirez's detention is unlawful. Even if the Court were to consider Petitioner's argument concerning his Bona Fide Determination and deferred-action status, Petitioner has not identified authority establishing that either determination requires his release from 8 U.S.C. § 1226(e) custody. Therefore, these arguments provide no basis for habeas relief.

## VI. Conclusion

For the reasons discussed above, I recommend that the Court deny Ramos Ramirez's petition.

Dated: August 28, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).